May it please the Court, my name is Alan Schroeder. I represent the plaintiffs and the appellants in this matter who are John and Martha Corrigan and Mike and Linda Hanley. I'd like to reserve three minutes for rebuttal. Go right ahead, just keep your eye on the clock please. Very good. I'm asking you now to pivot from the appeals previously before you today to discuss grazing preference and more specifically to discuss the disputed means by which the Bureau of Land Management canceled the grazing preference attached to the base property controlled by Corrigan and was this cancellation the fact that it was a means that was previously never interpreted or applied by the Bureau of Land Management under the Taylor Grazing Act, the Federal Land Policy Management Act or even the grazing regulations. The district court affirmed the disputed means to cancel holding that to quote the preferences cease to exist when the agency denies the application for renewal due to noncompliance. However, the flaw in that view in that holding is that the Taylor Grazing Act and the regulations don't say that. I want to briefly take a look. What do the statutes say about canceling? The statutes say that the regulations that the statute both the Taylor Grazing Act and grazing regulations here they have promulgated grazing regulations. Do we even have to look at the regulations if the two statutes are clear on their face that if someone is found not in compliance then they don't get priority for getting their permit renewed? Statutes say that. But the statutes here what were applied is that they promulgated a rule under the 4110 rule that we're talking about and that if there's a lack of substantial compliance there's a non-renewal of a permit. It says nothing in that rule in its text that that also results in the cancellation. So I go back I think to Judge Friedman's question looking at the Taylor Grazing Act 315b such permits and that's what we're talking about here shall be for a period of not more than 10 years subject to the preference right of the permittees to renewal. That's what establishes whatever right there is here without even getting into the part of the statute that talks about there is no actual right. But let's assume there is something subject to the preference right of the permittees to renewal. If there's no permittee how can there be a preference right? Because if you look up just above that in section 315b that's how a preference is established. This preference is established by giving to landowners within a grazing district and others that are qualified if they own certain property that they would be entitled to that preference. But again such permits shall be for a period of not more than 10 years subject to the preference right of the permittees to if the permit is already voided or there is not going to be any renewal then there's no longer any permittee so there's no preference right. I know you think I'm missing something and I'll give you a full chance to answer it but what am I missing? So I won't interrupt you on this point again. That's okay Judge Bennett. What you're missing is more clear authority in that upper part of the Taylor Grazing Act and the grazing preference concept that was established within section 315b. But more importantly is the 2014 amendment of the Federal Land Policy Act under section 1752c where it really clarifies it for everyone at that point in time where in subsection 1 they speak about renewal in the context of an expiring permit. That's where the board of land appeals held its hat. That's where the district court held its hat. That's where all watershed projects held their hat. That there has to be an existing permit upon which the preference is attached. But if you look at 1715c1 that is the section about renewal of the permit in the context of a expiring or I should say an existing permit that is about to expire. But then in 1752c2 that relates to that in which the permit has expired and in some cases in 1752c2 they also talk about it in the context of a transfer. But in terms of this context that we're talking about here, we're talking about a situation where if a permit expires, the preference still upon which then the bureau will then look to see to give the permit. I'm not sure whether we're... Doesn't 752c2 talk about a permittee who is in compliance with the rules and regulations and if the agency is determined that you're not in compliance, you don't have a permit and you don't have a preference under the statute before you even get to the regulations. Not in 1752c2, your honor. You're talking about you and the government dispute which version is applicable, right? No, I don't think there's any... Okay, so what I read is what Judge Friedman just read. The permittee or lessee is in compliance with the rules and regulations and the terms and conditions in the permit. And that seems to me to be pretty straightforward as a sine qua non of having this preference be able to be transferred and your clients were found not to be in compliance, right? Well, that is correct. The handlings were found not in compliance. They went through the decision-making process that was affirmed in a split decision. And then after that, then the property which still held the preference had not been canceled. It retained on the base property that Hanley owned at the time. It was transferred to Corrigan because the BLM, they had the discretion to cancel the preference. They did not. And so Corrigan applied for the preference. And then at that point in time is when is what really is what we're here about. Counsel, if a permit is revoked in your view, how long does the preference live for on its own? Until it's canceled, Your Honor. So forever? No. Well, if the Bureau of Land Management never exercises their authority, it is in their own regulations. They have the authority to cancel a permit. I understand what your argument is, but your view is unless they have, notwithstanding canceling the permit for whatever reason, absent a separate action to cancel the preference, it lives forever no matter what happens. That is the position, Your Honor. So I have one other question. You're talking about the regs and I may have missed this and I might just have the wrong end of the stick here, but I'm looking at the regs, 4110.2-1, base property. And it says here, when a permit or lease terminates because of a loss of ownership or control of a base property, the grazing preference shall remain with the base property and be available through application and transfer. Doesn't that suggest that if the other than loss of ownership or control, that the grazing preference doesn't remain with the base property? Or am I just completely missing something with that? Well, you certainly are reading the words. I guess you're doing what the agency did. You're doing what the district court did is because it doesn't say what the government in this case, therefore the preference is gone, therefore there's something there. And that's the problem with the government's theory in all of this is that they initially relied when they did not renew Henry's permit is under 4110.1B1 in which they specifically cited that rule and said because you are not in substantial compliance with the regulations, you therefore have no authority to or we are not going to renew the grazing permit. And it went through the process. That's all they did. They had the authority to cancel the preference. They never did for a three or four year period. They had an opportunity to do that. They didn't exercise it. And then when Hanley transferred it and transferred it to Corrigan, then all of a sudden they said, oh, yeah, the preference is attached. They didn't admit that. But the preference was still not canceled at that point in time. So Corrigan applied for it. But you said three or four years passed and they didn't cancel the preference. They didn't cancel the preference because their reading of the statute and the regulations is they didn't have to cancel the preference. Once the Hanley's were found to be in noncompliance and their permit was not going to be renewed, that was the end of the matter. And if the Hanley's wanted to transfer the land to somebody else, that's fine. They can stand in line with everybody else out in the world and seek a new permit. And if that was the government's view, that was never a view that they have previously taken since the passage of the Taylor Grazing Act since 1934. And this is the first time that they advanced it in the context. They've always taken they've always taken the position that a preference runs with the land, even if there's no compliant permittee. Yes, they have. In a matter of fact, in the in the cases in that example that I gave you and talking about the H case in, there was a previous decision in which the holder of the permit in that case, Wayne Hage, did not refuse to accept the permit. And so the BLM did nothing. And then 12 years later, BLM appropriately decided, yes, we never did cancel the preference. And so therefore, then they issued issued a decision canceling the preference. Counselor, you're you're you're you agree with the government or maybe you don't. But do you agree with the government that the statutes here are unambiguous? Yes. Okay. Counselor, you wanted to reserve three minutes, I think. Is that right? Yes. Yes, I did, Your Honor. Thank you. Okay. You bet. We're there. We'll hear from opposing counsel, please. May it please the court. My name is Christine England. I'm an assistant U.S. attorney for the District of Idaho, representing the federal appellees in this case. The court should affirm the district court's holding that a permittee who fails to comply with the terms and conditions of his permit forfeits preference for renewal. The district court correctly affirmed the Interior Board of Land Appeals holding that when a grazing permit expires, the associated grazing preference is automatically and simultaneously extinguished. And the I.B.L.A. in turn affirmed the hearings division and the hearings division in turn affirmed the B.L.M. Counselor, so tell me tell me what 4170.1-1 means when it talks about canceling a grazing preference. So when would you cancel a grazing preference? So 4170.1-1 addresses the situation like you've described, a cancellation of a permit and a preference. And cancellation occurs when you cancel a permit midstream. But the reg says cancel a grazing permit or lease and grazing preference. So are you saying that this this reg doesn't provide for a separate cancellation of a grazing preference? Yes, I was saying that that reg addresses the circumstance in which the B.L.M. is canceling a preference and permit or preference. So the Bureau has never canceled a preference on its own? Not that I'm aware of, your honor. The plaintiff here has referenced the B.L.M.'s decision in Hage. That Hage was never elevated to the I.B.L.A. who speaks for the Department of Interior. So if canceling a permit automatically cancels a preference, why would they even talk about canceling a preference in the reg? I mean, my reading of it suggests that there's authority for some reason to separately cancel a preference. But if there is no possibility of canceling a preference, why would it even be mentioned in the reg if it's automatically canceled on the canceling of the permit? I think that has to do, your honor, with the difference between non-renewal and cancellation. And so I'll start with sort of how this works in practice, because I think that helps illustrate it. But when B.L.M. issues a 10-year grazing permit, included in that permit is the preference right of renewal. And so when the 10-year permit comes to a close and the permittee comes to the B.L.M. and says, I'd like to exercise my preference for renewal, B.L.M. says, great, we will consider your application first because you're exercising your preference. And then they process it and either they renew or don't. Basically, in the context of renewal, that preference right is used. And if B.L.M. issues a new permit, that new permit includes a preference right of renewal. But in the situation of cancellation, where the B.L.M. comes in and cancels a permit, maybe at year five of a 10-year permit, there's some question as to what happens to that preference because the permittee hasn't exercised it as they would in the renewal context. And that's why the regulation conclusively provides that the preference is canceled along with the permit in the context of cancellation. So is the point that if the point is you have a 10-year permit, it's canceled at year five, and then you turn around either on the same piece of land or another piece of land and you say, I understand my permit was canceled. I want a new permit for this land or say the adjoining piece of land. But hey, since I had five years left on my combination permit and preference, I still get to exercise my preference in applying for the new permit. And therefore, we had to have a reg that covered both for those unique and probably not very unique. And I think that goes back to both what your honor, Judge Friedman and your honor, Judge Bennett have explained. It's the government's position that the court doesn't actually need to get beyond the statutes here because those statutes, the Taylor Grazing Act and the Federal Land Policy and Management Act really provide the guardrails for the B.L.M.'s regulations here. And as Judge Bennett explained, the Taylor Grazing Act limits preference for renewal to permittees, that is someone who has a permit. The plaintiffs here do not. And as Judge Friedman explained, it's having sort of the same position as the district court here that is that FLTMA provides that in order to have that first priority for renewal, the permittee must be in compliance with the terms and conditions of its permit, which again, the permittee here indisputably was not in compliance with the terms and conditions of its permit and simply could not hold that preference for renewal. And there's no factual dispute about that from anybody that they were not in compliance, correct? There is not, your honor, because the plaintiffs or the appellants in this case appealed that non-renewal of their permit for non-compliance all the way through the Interior Board of Land It's an indisputable fact. Anything further, counsel? Your honor, if there are no further questions for me, I would ask that the court affirm the district court's opinion affirming the IBLA's decision. Thank you. Ms. Brooks, did you want to be heard as well? Were you all getting time? Yes, your honor, if that's okay. Please. Well, first, if I would like for the court to be able to ask any questions it may have of me, but if the court doesn't have any questions at this point, I'd just like to make a few quick points. And so, first of all, the facts are clear that Hanley point in time in August of 2013 in which Hanley transferred the grazing preference through a base property lease. And so, then the question at that point in time for the government is not is there an existing permittee? The question is who is the applicant? And so, in this case, the applicant was Corrigan. And then you get into a question twofold, okay, does Corrigan then qualify as holding the requisite base property, yes or no? Then if he does hold the base property, then the question becomes is he a qualified applicant? And that got into other cancellations. So, that is effectively the process and that's precisely the process the federal land policy and management act clarified in their 2014 amendments in which in C1 they say, okay, are we looking at an expiring permit of a permittee? In that case, no. We're looking at a qualified applicant who now owns and controls this base property and in that case it's Corrigan. And so, it's 1752 C2 in which the BLM went through the process. And they do that under the umbrella knowing that at no prior time was the grazing preference that was attached to the base preference. The definition is in two different sentences. And in no, either of the definitions, and this is the government's definition of grazing preference. It's not handling, it's not our interpretation before this court. It is the fact that it is a means of super priority against others for the purpose of receiving a permit. It doesn't say that he has to be an expired permit. It could be either way. And that it attaches to base property. You've got to give meaning to both. So, in conclusion, we would ask this court to reverse the district court's decision as well as the agency's and remand it back to the agency to process Corrigan's application. Thank you, your honors. Thank you all for your excellent arguments. We appreciate your help very much. And we'll take that case under advisement and we'll stand in recess for today. Off record, please.
judges: Christen, Friedman, Bennett